## BOULET v. LE BLANC.
### No. 1429.

Court of Appeal of Louisiana. First Circuit.
March 4, 1935.

Harvey Peltier and Hubert Lafargue, both of Thibodaux, for appellant.

Howell & Deramee, of Thibodaux, for appellee.

ELLIOTT, Judge.

Dr. Irwin J. Boulet claims of Charles B. Le Blanc the sum of $1,313.70 with interest. The total amount is made up of sums claimed for services rendered as practicing physician and for medicine, but the principal part is on account of an alleged breach of contract concerning the pasturage of plaintiff's cattle on a tract of land in the rear of Edna Plantation, held by defendant under a lease from Allen T. Dusenbury.

Defendant excepted to the petition on the ground that it was vague, indefinite, and set forth no right or cause of action. The plaintiff amended his petition by consent, and the exceptions passed out of the case.

The defendant answering denies owing plaintiff anything. He admits that the plaintiff rendered him service as a physician, but alleges that he had paid in full the amount due on that account.

As for the alleged breach of contract, he enters into a lengthy justifying explanation in which he denies that he breached the contract, and alleges that plaintiff himself violated it in several ways. He alleges that the plaintiff obtained a lease of the land over which passed the only road leading to the cattle pasture in question, then entered into a contract with defendant for the pasture of his cattle, and afterwards forbade defendant using the road, making it in that way impossible for defendant to carry out the contract. That plaintiff in addition sent men into the pasture to look after his cattle, in violation of his contract with defendant, and refused to pay the rent when due.

Defendant prays that plaintiff's demand be rejected, and in conclusion sets up a demand in reconvention against him for $200 on account of unpaid rents.

There was judgment in favor of the plaintiff against defendant for $130 with interest on account of services rendered by plaintiff to defendant as practicing physician.

The item of $2 claimed by plaintiff on account of medicine furnished was not mentioned. Plaintiff's demand against defendant for damages was refused, and defendant's demand in reconvention against the plaintiff was also refused. The plaintiff has appealed. Defendant has not answered the appeal.

He does not complain of the judgment rejecting his demand in reconvention, nor of the judgment against him for $130 on account of services rendered him by plaintiff as practicing physician. He does not discuss the item of $2, but urges that the judgment rejecting plaintiff's demand against him on account of damages for breach of contract be affirmed.

The plaintiff testifying on the subject of his claim for $2 on account of medicine sold and delivered to defendant says that his charge against defendant is for visits made to him; that he always required that the medicine be paid for. This statement is repeated, but in another part of his testimony he says that the item of $2 was not paid for. After considering the testimony on the subject, we think the judgment appealed from should, in that respect, be left as it is.

The serious controversy in the case is in regard to the alleged breach of contract concerning pasture rights on the prairie used for grazing cattle situated in the rear of the Edna Plantation. The defendant Le Blanc had leased this land from the owner and had been using it as a pasture for a good many years before he had any business relations with the plaintiff on the subject. Two or three years before this suit was filed he entered into an agreement with plaintiff whereby plaintiff was permitted to put his cattle in the pasture to graze at a consideration of $2 a year per head for grown cattle, payable every six months in advance. The estimate of the parties fixed $200 payable every six months, or $400 a year, thus indicating that plaintiff had 200 head of grown cattle in the pasture. It seems that only plaintiff's and defendant's cattle were to be admitted to the pasture. The business relations of the parties were amicable until a disagreement came about concerning the amount of rent agreed on for the year 1933 and as to the duration of the lease. The plaintiff contends that he leased from defendant for two years, commencing January 1, 1933, while defendant contends that it was for six months, commencing January 1, 1933. The matter controverted is involved in uncertainty and doubt.

The plaintiff in one part of his testimony says that he and the defendant entered into

an oral agreement in the early part of December, 1932, concerning the rent for 1933 and 1934 under which the amount was to be $300 per year payable $150 every six months in advance, and was to last for two years from January 1, 1933; but in another part he says that this agreement was in the latter part of December. Only plaintiff and defendant were present at this first meeting. The plaintiff then arranged a subsequent meeting at the store of Isidore Leche. The exact date of this meeting is uncertain, but facts and circumstances show that it was in December, 1932, and likely within a week or ten days after the first meeting.

At this second meeting, besides plaintiff and defendant, there were present Mr. and Mrs. Isidore Leche. Plaintiff testifies that at this second meeting he reaffirmed the agreement which had been entered into between the two a few days before. The testimony of the plaintiff and defendant on the subject is in conflict. Plaintiff contends that Isidore Leche and wife support his version as to what took place. Mr. Leche, closely questioned about the result of the meeting, says twice that the parties "almost agreed." Questioned about his meaning, when he says that the parties almost agreed, he explained that the language was a slang expression; that the parties really agreed as claimed by plaintiff.

The evidence shows that Mr. Leche was half owner with plaintiff of a lease acquired from the owner of the Edna Plantation which gave them control of the road which afforded the only access to and from the pasture situated in the rear of the plantation on which plaintiff's cattle were at pasture, and the evidence impresses us that Mr. Leche in giving his testimony had a friendly interest in the controversy as the friend of the plaintiff. Giving to his statement the effect which we think it should have, that "they almost agreed," his testimony operates against the plaintiff and supports defendant's version as to same. Mrs. Leche in one part of her testimony supports plaintiff, but admits that she was not present all the time and did not hear all that was said.

Defendant testifies that at the first meeting which took place between him and plaintiff in the first part of December, 1932, as well as at the second meeting during the same month at the store of Isidore Leche, the parties simply reaffirmed the agreement that had existed between them previously, on the usual terms of $2 a head for grown cattle, that the period of time was six months, the rent was to be paid in advance, and that the number of cattle belonging to plaintiff admitted to the pasture made $200 due on January 1, 1933. He testifies that six-month periods of time were the terms under which he held the property from Allen T. Dusenbury, the owner, but anticipated a renewal of his own right, and he intended to extend the same right to plaintiff, which would have given plaintiff a right of pasture for one year, to be counted from January 1, 1933. Defendant, in connection with his testimony on this subject, produced and filed in evidence the contract he had entered into with Dusenbury for the year 1933. The contract between Dusenbury and the defendant was for periods of six months only, with the rent payable in advance. The contract between defendant and Dusenbury does not establish the contract between plaintiff and defendant, but it does show that defendant's right was limited to six-month periods of time. Defendant assumed that he would be able to sublet to plaintiff. And as he had used the road through Edna Plantation for many years in order to reach the pasture land, without objection from the plantation owners, and not being aware that plaintiff and Leche had acquired control of the road, he naturally indulged the assumption that for the purpose of looking after plaintiff's cattle, as well as his own, he would have the free use of the road as theretofore.

Defendant called on plaintiff about January 1, 1933, for rent, in amount $200.

Plaintiff tendered his check for $150, claiming that was the amount agreed on. A sharp contention on the subject ensued. The plaintiff forbade defendant the use of the road which led to the pasture and afforded the only access thereto. Defendant finally agreed to accept the $150 and accepted it, as shown by a check in the record; but he testifies that in receiving the check at the time mentioned, he stipulated that the reduced amount was in consideration that he have the use of the road and that the rent for the next six months would be $200, the same as had been previously paid. Plaintiff testifies that the amount tendered was all he owed under their agreement, and that the next payment was to have been $150, and for two years after the 1st of January, 1933.

After this episode, plaintiff decided that he ought to have the lease reduced to writing. He accordingly had the form of a lease prepared, at the rate of $150 per year for two years, commencing January 1, 1933, which he submitted to defendant and requested him to sign. Defendant refused to do so. Parties

differ as to what was said on this occasion. On this occasion plaintiff again forbade defendant using the road which led to the pasture. The exact date, when plaintiff sought to obtain defendant's signature to a written lease on the terms and for the period of time stated, cannot be determined from the evidence, but it was likely during the latter part of April, 1933.

Suppose the agreement to have been as claimed by plaintiff or defendant, concerning plaintiff's right to put his cattle in the pasture, it provided either way for the payment of a sum of money by the plaintiff to defendant, and defendant undertook to take care of plaintiff's cattle, round them up, dip them when they needed it, get them up to let buyers look at them, mark and brand the calves. Such services, of course, made it necessary that defendant have access to the pasture. This service on the part of the defendant was part of the agreement under which plaintiff's cattle were admitted to the pasture; consequently when plaintiff forbade defendant to use the only road that led to the pasture, he in effect forbade the carrying out of the agreement. It matters not whether the price of the lease was to be as claimed by plaintiff or defendant, nor whether its duration was as claimed by plaintiff or defendant, it is plain that the parties contemplated the same use of the road by the defendant for the purpose of performing the service he was to render to the plaintiff in looking after his cattle, as had existed theretofore.

On March 4, 1933, plaintiff wrote defendant: "This is to notify you and your son and employees are to discontinue using the Edna Plantation as a means of egress and ingress to and from the pasture in the rear of the plantation." The pasture referred to is the one in which plaintiff's cattle were pastured, and the effect of the notice was to forbid carrying out the contract. This notice, the third received, constituted an active violation of the contract. About the time plaintiff wrote this letter he hired other men and sent them in the pasture to look after his cattle, showing that he did not depend on defendant doing it any longer.

The Civil Code provides: "The obligation of contracts extends not only to what is express-

ly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect." Civ. Code, art. 1903.

With this provision in mind it seems that the plaintiff by his own act discharged the defendant from his undertaking of looking after his cattle, rounding them up, dipping them, marking and branding the calves, and justified defendant in giving plaintiff notice to take his cattle out of the pasture and in subleasing the pasture to another party, as was done.

■ The plaintiff alleges a contract for a certain price and length of time and that defendant breached the contract. Defendant denies in his answer, and testifies as a witness that he did not enter into the alleged contract and did not breach any contract. The burden of proof is upon the plaintiff, and we conclude that the plaintiff has not carried the burden of proof. It follows that plaintiff has not established, as the fault of the defendant, the loss and damage of which he complains, if any he sustained, and as to which we express no opinion.

But suppose it be considered that plaintiff has established a contract and for the period of time alleged by him, plaintiff cannot avail himself of it, because the evidence shows that he voluntarily, actively, and wrongfully violated it in the way heretofore stated, thereby discharging defendant from all responsibility in the matter.

Plaintiff admits that he had authority and control over the road at the time he entered into the contract with the defendant, and did not make it known to defendant. His position, that under the circumstances he had the right to close the use of the road against defendant, seems untenable to us.

There are some other matters about which the parties differ, but it is not worth while to carry the discussion any further.

The lower court giving written reasons covers the case very fully. It is our opinion that the judgment appealed from is correct and should be affirmed.

Judgment affirmed. Plaintiff and appellant to pay the cost in both courts.